1          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   UNITED STATES OF AMERICA,        )  Docket No. 21 CR 371-5
                                     )
4                 Plaintiff,         )  Chicago, Illinois
                                     )  March 24, 2022
5            v.                      )  3:46 p.m.
                                     )
6   BIANCA FINNIGAN,                 )
                                     )
7                 Defendant.         )

8
         TRANSCRIPT OF PROCEEDINGS - Change of Plea
9         BEFORE THE HONORABLE MATTHEW F. KENNELLY

10
    APPEARANCES:   (Via Videoconference)
11

12  For the Government:     UNITED STATE'S ATTORNEY'S OFFICE by
                            MR. ANDREW ERSKINE
13                          Assistant United States Attorney
                            219 South Dearborn, 5th Floor
14                          Chicago, IL  60604

15
    For the Defendant:      LAW OFFICES OF JAMES D. TUNICK by
16                          MR. JAMES D. TUNICK
                            650 North Dearborn, Suite 700
17                          Chicago, IL  60654

18

19

20

21

22  Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
                            Official Court Reporter
23                          219 S. Dearborn Street, Room 2504
                            Chicago, IL 60604
24                          312.435.6047
                            gayle_mcguigan@ilnd.uscourts.gov
25

1          (Proceedings heard via videoconference.)

2               THE CLERK:  Case 21 CR 371-5, USA versus Finnigan.

3               THE COURT:  This is Judge Kennelly.  We're proceeding

4     by videoconference.

5               Can the government's lawyer please give your name for

6     the record.

7               MR. ERSKINE:  Good afternoon, your Honor.  Andrew

8     Erskine on behalf of the United States.

9               THE COURT:  And Ms. Finnigan's lawyer?

10              MR. TUNICK:  Good afternoon, your Honor.  James Tunick

11     on behalf of Bianca Finnigan.

12              THE COURT:  Ms. Finnigan, can you hear and see okay?

13              THE DEFENDANT:  Yes, your Honor, I can.

14              THE COURT:  All right.  So it's my understanding that

15     Ms. Finnigan is going to be entering a guilty plea to a

16     criminal charge here today.

17              So, first of all, Ms. Finnigan, I was advised by your

18     counsel that you were in agreement with doing this hearing by

19     video rather than doing it in open court.  Is that correct?

20              THE DEFENDANT:  Yes, that's correct, your Honor.

21              THE COURT:  All right.  So I'm finding, under the

22     CARES Act, that the hearing cannot be appropriately delayed

23     without significant harm to the interest of justice due to the

24     impending trial date.

25              So, Ms. Finnigan, before I can accept a guilty plea

1    from you, I'm going to have to ask you a whole bunch of

2    questions under oath, and I want to start off by explaining why

3    I need to do that.

4         I need to be sure that you're competent; that you've

5    had the assistance of counsel; that you understand the charges

6    against you and the possible penalties on those charges.  I

7    need to make sure you understand all the rights that you'll be

8    giving up if you plead guilty.  I need to make sure that

9    there's a basis in fact to support a guilty plea.  And I need

10   to make sure that you're doing this voluntarily.

11        So in a second here, my clerk is going to come back on

12   the screen and put you under oath so I can ask you questions

13   about those things.  Before she does, there are three things I

14   want you to understand.

15        First of all, you can stop to talk to your lawyer at

16   any time during our hearing, and you can stop for any other

17   reason.  So if you want to talk to Mr. Tunick at any point in

18   time, just tell me, and we'll figure out a way to do that.  And

19   if you want to stop for any other reason, even if you've just

20   changed your mind, please let me know and we'll stop.

21        The second thing is that under -- you're going to be

22   under oath, so it's important to give truthful answers to all

23   my questions because a false answer under oath is a crime.

24        And the third thing is that, under the Fifth Amendment

25   of the U.S. Constitution, you have a right not to be a witness

1    against yourself.  However, you're going to be answering

2    questions under oath.  So that means you're going to be giving

3    up your constitutional right to remain silent, and some of the

4    things you tell me may incriminate you.

5            Do you understand everything I've told you so far?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  All right.  Melissa, can you please put

8    Ms. Finnigan under oath?

9            THE CLERK:  Please raise your right hand.

10           Do you solemnly swear or affirm that all the

11   statements you're about to make will be the truth, the whole

12   truth, and nothing but the truth?

13           THE DEFENDANT:  I do.

14        (Defendant sworn.)

15           THE COURT:  All right.  Can you please tell me your

16   name?

17           THE DEFENDANT:  Bianca Finnigan.

18           THE COURT:  Ms. Finnigan, how old are you?

19           THE DEFENDANT:  Thirty-two.

20           THE COURT:  How far did you go in school?

21           THE DEFENDANT:  A high school diploma.

22           THE COURT:  And what was the last type of job that you

23   held?

24           THE DEFENDANT:  Homemaker, still.

25           THE COURT:  Got it.  Okay.

1       Are you in good physical health?

2       THE DEFENDANT:  Yes.

3       THE COURT:  Are you under treatment by a doctor for

4   any reason at all?

5       THE DEFENDANT:  No.

6       THE COURT:  Are you on any medications of any kind?

7       THE DEFENDANT:  No.

8       THE COURT:  Have you ever been under the care or

9   treatment of a psychiatrist or a psychologist for any reason at

10  all?

11      THE DEFENDANT:  No.

12      THE COURT:  Has any type of doctor or psychiatrist or

13  psychologist ever told you that you have any type of mental

14  disease or mental disorder?

15      THE DEFENDANT:  No.

16      THE COURT:  Have you ever been in any kind of

17  counseling or treatment for a drug or alcohol problem?

18      THE DEFENDANT:  No.

19      THE COURT:  In the last 24 hours, have you had any

20  medications, any drugs or narcotics, or anything to drink with

21  alcohol in it?

22      THE DEFENDANT:  No.

23      THE COURT:  Mr. Tunick, do you have any doubt

24  regarding Ms. Finnigan's competence?

25      MR. TUNICK:  No, your Honor.

1          THE COURT:  Mr. Erskine, do you have and does the

2     government have any doubt regarding Ms. Finnigan's competence?

3          MR. ERSKINE:  No, your Honor.

4          THE COURT:  All right.  Ms. Finnigan, can you --

5     everybody just kind of went out for me for a second.

6          Okay.  Melissa, what I'm going to ask you, because I'm

7     on -- it's dicey here.  If I -- if for some reason I go off, I

8     need you to text me on my cellphone; and then what I'll do is

9     I'll just rejoin by phone only at that point.

10         So let me go back to Ms. Finnigan.

11         Ms. Finnigan, can you please tell me the name of your

12    lawyer?

13         THE DEFENDANT:  James Tunick.

14         THE COURT:  Have you had enough time to talk to

15    Mr. Tunick about the charges against you?

16         THE DEFENDANT:  Yes, I have.

17         THE COURT:  Have you told him everything you know

18    about those charges?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Has Mr. Tunick answered all of your

21    questions?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Have you had enough time to talk to him

24    about your decision to plead guilty?

25         THE DEFENDANT:  Yes.

1        THE COURT:  Are you satisfied with the advice that

2   Mr. Tunick has given you?

3        THE DEFENDANT:  Yes.

4        THE COURT:  And are you satisfied with the work that

5   he's done for you so far?

6        THE DEFENDANT:  Yes.

7        THE COURT:  So if you have or if you've had any

8   problems at all with the quality of your legal representation,

9   it's important to tell me now because now is when I have a

10  chance to do something about it.

11       So, for example, if you think that there's something

12  that Mr. Tunick did that he shouldn't have done or something

13  that he didn't do that he should have done or something that he

14  did incompetently or incompletely or incorrectly, it's

15  important to tell me about that now.

16       Do you have any kind of issues like that at all?

17       THE DEFENDANT:  No, your Honor.

18       THE COURT:  Okay.  So I've been given a plea agreement

19  here.  And if I can get this to work right, because I'm doing

20  these off of my iPad today, so -- give me a second.

21       First of all, I'm going to try to put up the first

22  page of the plea agreement, just so you can see it, because

23  that part has got your name on it.

24       And it would help to have my glasses on.

25       Let's see here.

1          Okay.  So, hopefully, you're going to be -- do you see

2     the plea agreement that has your name on it there?

3          THE DEFENDANT:  Yes.

4          THE COURT:  So now I'm going to show you the last

5     page.  I'm going to have to take that page down.  And now I

6     show you the page that's got your signature on it.

7          Is that -- it's kind of a faint copy, but is that your

8     signature over on the right of the page there?

9          THE DEFENDANT:  Yes.

10         THE COURT:  I'm going to take that off the screen now.

11         Did you read the whole plea agreement carefully before

12    you signed it?

13         THE DEFENDANT:  Yes, I have.

14         THE COURT:  And did you go over it with the lawyer,

15    and did he explain to you everything that's in the plea

16    agreement?

17         THE DEFENDANT:  Yes, he did, your Honor.

18         THE COURT:  Do you believe that you understand

19    everything that's in the plea agreement?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Does the plea agreement contain every

22    agreement and every understanding that you have with the

23    government about your case?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you have any kind of agreement with the

1    government that got left out of the plea agreement?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Other than what's in the plea agreement,

4    has anyone at all promised you anything to get you to plead

5    guilty?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  Has anybody tried to pressure you or

8    coerce you or intimidate you to get you to plead guilty?

9              THE DEFENDANT:  No.

10             THE COURT:  Are you pleading guilty of your own free

11   will?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Okay.  So the plea agreement says that

14   you're pleading guilty to Count One of the indictment, which is

15   a charge of conspiracy to commit money laundering.

16             I'm just going to ask the lawyers to kind of backstop

17   me here if I misstate the elements because there isn't a

18   pattern instruction for this, so I'm -- to a certain extent,

19   I'm just doing this from experience.

20             So, Ms. Finnigan, here is what I believe that the

21   government would have to prove to convict you.

22             So, first of all, the government would have to prove

23   that there was a conspiracy.  A conspiracy means an agreement

24   involving you and at least one other person to do something

25   illegal.  And in this case, the illegal object of the

1   conspiracy is to conduct what's commonly known as money

2   laundering.  And what that means in this case is conducting

3   some form of a financial transaction that involves the proceeds

4   of buying or selling or dealing in illegal controlled

5   substances in a way that's designed to conceal or disguise the

6   nature of the proceeds -- or the nature or the control or the

7   source of the proceeds of that illegal activity.

8           Do you understand that that's the first thing that the

9   government would have to charge?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  And so the government would have to

12  prove -- when I say charge, that's the first thing the

13  government would have to prove.

14          And so the government would have to prove that that

15  conspiracy existed and that you knowingly joined that

16  conspiracy, which means that you knowingly became a part of an

17  agreement to do what I just described.  "Knowingly" means that

18  you understood that that's what you were doing and it was not a

19  mistake or an accident.

20          Secondly -- well, let me ask the lawyers a question.

21          Is this the type of conspiracy that requires an overt

22  act to be proved?

23          MR. ERSKINE:  No, your Honor.

24          THE COURT:  So besides what I've already described,

25  are there other elements of the charge that would have to be

1    proven that either side thinks that I should go through?

2         MR. ERSKINE:  No, your Honor.

3         THE COURT:  Do you agree with that, Mr. Tunick?

4         MR. TUNICK:  I do agree that those are the elements,

5    Judge.

6         THE COURT:  Okay.  All right.  So do you understand

7    that what I've described to you, Ms. Finnigan, is what the

8    government would have to prove to convict you?

9         THE DEFENDANT:  Yes, I do.

10         THE COURT:  So the next thing I'm going to go over

11    with you is what the maximum possible penalties are when a

12    person gets convicted of a charge like this.

13         The maximum possible penalty is a prison term of 20

14    years.

15         If you're sentenced to any kind of a prison term,

16    you're subject to what's called supervised release after you

17    get out of prison.  And that means supervision by a probation

18    officer.  That can be as long as three years.  When you're

19    under supervised release, you have to follow various rules and

20    regulations.  And if you break those or violate them, you can

21    be sent back to prison.

22         The penalties also include a fine, which can be the

23    greater of two figures, either $500,000 or twice the amount of

24    property that's involved in the conspiracy, whichever is

25    bigger.

1           The penalties also include court costs, what's called

2    an assessment.  That's $100.

3           Was there a forfeiture count?  I don't think so,

4    right?

5           MR. ERSKINE:  Not as to this defendant, your Honor.

6           THE COURT:  Okay.  All right.  So do you understand

7    that those are the maximum possible penalties, Ms. Finnigan?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  When I sentence you in the case, I'm going

10   to have to consider something called the sentencing guidelines.

11          Do you understand that?

12          THE DEFENDANT:  Yes, I do, your Honor.

13          THE COURT:  Has Mr. Tunick gone over with you how the

14   sentencing guidelines might apply in your case?

15          THE DEFENDANT:  Yes, he has.

16          THE COURT:  So I'm going to do that as well, briefly.

17          The way the sentencing guidelines work is that I have

18   to calculate two different scores.

19          To get the first one, I look at whether you have a

20   prior criminal record and all the details of that.  That's the

21   first score.

22          To get the second score, I look at the facts and the

23   circumstances of the crime that you're pleading guilty to, plus

24   any other related criminal conduct that you were involved in.

25          Once I have both of those scores, I look at a chart.

1   Mr. Tunick may have shown it to you.  I'm actually going to

2   show it to you right now as well.

3               You should be seeing right now a chart.

4               Have you seen something that looks like that before?

5               THE DEFENDANT:  Yes, your Honor.

6               THE COURT:  Okay.  So the way it works is that you see

7   along the left-hand side of the page in that column is the one

8   set of scores.  And along the top of the page, there's another

9   set of scores.  And so once I have your two scores, I look at

10  the chart.  And the chart will give me a range of sentences

11  that I have to consider when I sentence you, along with other

12  factors.

13              Do you understand that?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  I'm going to take that off the screen.

16              So the way it works is that I have to consider this --

17  that range under the sentencing guidelines, but I'm not

18  required to sentence you inside that range.  I can go above it,

19  anywhere up to the maximum possible penalty, or below it,

20  anywhere down to probation.  However, I have to consider the

21  range under the sentencing guidelines, along with a number of

22  other factors.

23              The other factors include things like your own

24  personal circumstances; the nature of the crime; the need to

25  impose a just penalty and to promote respect for the law; the

1    need to prevent you and other people from committing crimes in

2    the future; the need to provide you with any necessary services

3    or treatment; and the need to provide any restitution to the

4    victim -- to any victim of the crime.

5            Do you understand all of that?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Also there's one thing that I think I

8    overlooked when I was talking about penalties.

9            The penalties can include restitution.  I actually

10   don't think that's an issue in this case.  But one of the

11   penalties that a person can get when they're sentenced to a

12   crime is having to pay back losses to a victim, if there is a

13   victim.

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Okay.  So back to the sentencing

17   guidelines.

18           I'll consider all of those factors.  And then once I

19   sentence you, if I sentence you to a prison term, in the

20   federal prison system, they don't have parole.  What I mean by

21   that is you'll serve whatever sentence I impose.  You may get

22   time off for good behavior if the Bureau of Prison thinks

23   you're entitled to it.  But aside from that, you won't be

24   released early or paroled.

25           Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And do you understand that you'll have the

3    right to appeal to a higher court to challenge whatever

4    sentence I impose in your case?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  So if you're like most people in your

7    situation, one of the things -- and there's a good chance you

8    may have talked to Mr. Tunick about -- is what -- how long of a

9    sentence he thinks that I'm going to impose in the case.  And I

10   don't want to know about any of those conversations because

11   that's a private matter between you and him.  What I do want to

12   make sure you understand is that any predictions or any

13   educated guesses that either Mr. Tunick or anybody else may

14   have made about what sentence is going to be imposed in your

15   case, none of that is binding on me.  And if I ended up

16   sentencing you to a prison term that's more severe than what

17   you're hoping for or than what somebody has predicted, you

18   won't have the ability to back out of your plea agreement for

19   that reason.

20         Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  One other thing about sentencing.

23         In the plea agreement, you've made some agreements

24   with the government about how to calculate those scores under

25   the sentencing guidelines.  Again, I'm going to consider that

1    when I sentence you.  But if I come up with a different

2    calculation, you won't be able to change your mind about

3    pleading guilty because those agreements aren't binding on me

4    either.

5              Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Okay.  So the next thing I'm going to go

8    over with you are what rights you have and what rights you'll

9    be giving up if you plead guilty.

10              So there's one right you're not giving up, and that's

11    your right to a lawyer.  You have a right to a lawyer at every

12    stage of the case:  Now, trial, sentencing, and appeal.  And if

13    at any point in time you can't afford a lawyer, you have the

14    right to have a lawyer appointed to represent you without any

15    cost to you.

16              Do you understand all of that?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Next, I'll explain the rights that you

19    will be giving up if you plead guilty.

20              You have a right to a speedy trial on the charges

21    against you.  There are two types of trials:  Jury trials and

22    bench trials.  You have the right to a jury trial.  The jury

23    would consist of 12 people.  And we would bring in a lot more

24    people than that, and they would all be chosen randomly.  And

25    those people would be questioned about their backgrounds, about

1    any prejudices or biases that they have.  You and your lawyer

2    would get to participate in that process.  At the end of that,

3    you would be able to excuse -- in other words, kick off the

4    jury -- anybody who was biased or prejudiced or who couldn't be

5    fair.  In addition, you would be able to excuse a certain

6    number of jurors without even giving me a reason for it.

7            Once we finished selecting the jury, we would have 12

8    jurors.  And before they could decide your case, all 12 of them

9    would have to agree on the decision.  In other words, they have

10   to be unanimous.

11           Do you understand all that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  The other type of trial you can have is

14   what's called a bench trial.  That's where I would decide the

15   case without a jury.  And in order to have a bench trial in

16   federal court, both you and the prosecutor would have to agree

17   to it.

18           Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  If the case went to trial, you would have

21   the right to see and hear every witness testifying against you.

22   You would have the right to question any witness who testifies

23   against you by what's called cross-examination.  You would have

24   the right to call witnesses to testify in your defense.  If you

25   needed to make a witness come to court, you could use a

1   subpoena, which is a type of a court order, to make the person
2   come to court.

3          If the case went to trial, you would be able to
4   testify in your own defense, if you wanted to.  You would also
5   be able to choose not to testify if you didn't want to.  If you
6   chose not to testify at a trial, that couldn't be held against
7   you in any way in deciding whether you're guilty.

8          If the case went to trial, you would not have to prove
9   that you're innocent.  In fact, you could not be convicted on
10  any charge unless the government proved you guilty of that
11  particular charge beyond a reasonable doubt, and you would be
12  presumed innocent of all the charges against you.  And if you
13  were being tried together with other people, you would get
14  separate consideration of the charges against you.

15         Do you understand all that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  If the case went to trial and you got
18  convicted, you would have the right to appeal your conviction
19  to a higher court.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now, if you plead guilty to this charge
23  here today, and if I accept your guilty plea, you're going to
24  be giving up all the rights I just explained to you.  In other
25  words, there won't be a trial.  There won't be any witnesses or

1     evidence.  Instead, I'm going to find you guilty on this one

2     charge here today based on your guilty plea.  And then on a

3     later date, I'm going to impose a sentence on you.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And do you understand that you have the

7     right to plead not guilty and go to trial?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And then one more thing.  The plea

10    agreement says that once I've sentenced you on this one charge,

11    then the government is going to drop the other charges against

12    you.

13         Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Okay.  So in the plea agreement -- and it

16    starts at page 2, and it goes over to the bottom of page 4 --

17    there's a summary of the evidence that proves your guilt on

18    this charge.

19         Did you go over that summary carefully with

20    Mr. Tunick?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And did you agree with all the facts that

23    are stated there?

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.  So even though it's in there

1    in writing, I'm going to ask the prosecutor to summarize out

2    loud the evidence that would prove your guilt on this charge.

3    And then I want you to listen to him carefully because when

4    he's finished, I'm going to ask if you agree with what he said.

5              Mr. Erskine, you can go ahead.

6              MR. ERSKINE:  Yes, your Honor.

7              Beginning on page 3.  Beginning no later than in or

8    about 2016, Finnigan agreed to help her sister, Vivianna Lopez,

9    spend cash drug proceeds located in the Chicago area in ways

10   Finnigan knew were designed to conceal the fact that the funds

11   involved were drug proceeds.  Finnigan and Vivianna Lopez did

12   this using several different methods.

13             First, Finnigan gave Vivianna Lopez access to a credit

14   card that was under the name of Finnigan and her spouse.

15   Vivianna Lopez used this credit card to make purchases.

16   Finnigan then took cash drug proceeds belonging to Vivianna

17   Lopez, deposited the proceeds into Finnigan's bank account, and

18   used those deposits to make payments against the credit card

19   balances that Lopez accrued.

20             Second, Finnigan deposited cash drug proceeds, which

21   belonged to Vivianna Lopez, into Finnigan's savings account.

22   Finnigan -- (inaudible)

23             COURT REPORTER:  Excuse me.  I'm sorry, Judge

24   Kennelly.  This is the court reporter.  I'm hearing a lot of

25   background noise.

1          THE COURT:  The background noise isn't coming from me

2    because I'm just on headphones.

3          Mr. Erskine, why don't you back up a couple sentences.

4    I noticed that you're kind of cutting in and out a little bit.

5    Honestly, I wasn't sure whether it was on my end or yours, so

6    maybe it's on your end.  I don't know.

7          MR. ERSKINE:  Yes, your Honor.

8          Second, Finnigan deposited cash drug proceeds, which

9    belonged to Vivianna Lopez, into Finnigan's savings account.

10   Finnigan then transferred funds to the bank account of Vivianna

11   Lopez.

12         Third, Finnigan deposited cash drug proceeds, which

13   belonged to Vivianna Lopez, into Finnigan's bank account, and

14   then used the funds to pay for products and services requested

15   by Vivianna Lopez, such as airfare, private school tuition,

16   rent, and utilities.  Finnigan made these payments either

17   directly from her bank account or via Venmo.

18         Fourth, between on or about March 4, 2020, and March

19   6, 2020, Finnigan, her aunt Laura Lopez, and Vivianna Lopez

20   worked in concert to purchase an exercise bike system for

21   Vivianna Lopez using cash drug proceeds that Laura Lopez stored

22   at the behest of Vivianna Lopez.  Vivianna Lopez identified the

23   bicycle and accessories that she wanted purchased, and she

24   provided the information to Laura Lopez, who, in turn, passed

25   the information to Finnigan.  Finnigan then used a credit card

1    belonging to her and her spouse to purchase the products for

2    $3,140.87, arranging for the items to be shipped directly to

3    Vivianna Lopez.  After Finnigan made the purchase, Laura Lopez

4    reimbursed Finnigan by giving her $3,141 in cash, which funds

5    Finnigan understood were drug proceeds.

6            On March 11, 2020, after becoming aware of the

7    government's investigation, Finnigan called the bike company

8    and cancelled the order.

9            Finnigan acknowledges that the total amount of money

10   involved in the offense for which she is accountable is at

11   least $151,881.09.

12           THE COURT:  Okay.  Ms. Finnigan, did you hear

13   everything that the prosecutor said?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Did you agree with all of it?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Did he say anything at all that you

18   disagreed with?

19           THE DEFENDANT:  No.

20           THE COURT:  All right.  So how do you plead to the

21   charge in Count One of the conspiracy to commit money

22   laundering?

23           THE DEFENDANT:  Guilty, your Honor.

24           THE COURT:  All right.  I find that Ms. Finnigan is

25   competent, she's had the assistance of counsel, she understands

1    the charges as well as the possible penalties, and she

2    understands the rights that she's giving up by pleading guilty.

3            I also find that the plea is knowing and voluntary,

4    and it's supported by an independent basis in fact.

5            And for all of those reasons, I accept Ms. Finnigan's

6    plea, and I find her guilty as charged as to Count One.

7            So, Ms. Finnigan, I want to explain to you what's

8    going to happen between now and the date that I sentence you.

9            So the Probation Office, which is part of the court,

10    is going to prepare a report called a presentence report.  And

11    when I sentence you, I'll consider that report.  Somebody from

12    the Probation Office is going to ask for permission to

13    interview you.  And if you agree to an interview, they're going

14    to ask you questions about yourself and your background, and

15    they'll also ask you about the charges in this case.  It's very

16    important for you to understand that you have the right to

17    consult with your lawyer, Mr. Tunick, about whether you should

18    be interviewed by the probation officer.  And if you agree to

19    an interview, you have the right to have Mr. Tunick accompany

20    you during the interview.  And, nowadays, I think these things

21    mostly happen by video.  Those are very important rights that

22    you should take advantage of.  The reason that they're

23    important is that anything you give or tell to the probation

24    officer is going to be written down on a report that I'll

25    consider when I sentence you, so it's important to get

1    Mr. Tunick's advice about this part of the case, too.

2                Do you understand all that?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Okay.  Once the presentence report is

5    prepared, you'll get a copy of it.  You'll have a chance to

6    read it and go over it with Mr. Tunick.  And you'll also have a

7    chance to object to anything in the report that you disagree

8    with.

9                Then we'll have a sentencing hearing, which will

10   either be in court or, if we're still able to conduct video

11   sentencings at that point and you agree to it, we can do it by

12   video.  And either way is fine, as far as I'm concerned.

13               At the sentencing hearing, both your lawyer and the

14   prosecutor will get to make arguments to me about what sentence

15   I should impose.  And you'll get to speak to me directly, if

16   you want to, to tell me anything you think I ought to consider.

17               If you have any witnesses or any evidence or any kind

18   of information that you think I should take into account in

19   deciding what sentence to impose, you should make sure you tell

20   your lawyer about it promptly so he can bring it to my

21   attention at the appropriate time.

22               Do you understand all that?

23               THE DEFENDANT:  Yes, your Honor.

24               THE COURT:  Okay.  So the trial date is vacated as to

25   Ms. Finnigan only.

1          And, Melissa, what are we talking about in terms of a

2    sentencing date?

3          THE CLERK:  Judge, the first available date would be

4    June 21st.

5          THE COURT:  Does June 21st at 1:15 work okay for

6    counsel?

7          MR. ERSKINE:  Your Honor, in light of -- yes,

8    that's -- what we had budgeted for the trial, but the way it's

9    shaping up --

10         THE COURT:  Oh, yes.  Okay.  Yes, I mean, we can

11   always move it if it ends up conflicting.

12         Mr. Tunick, does that date work okay for you?

13         MR. TUNICK:  It does, your Honor.

14         THE COURT:  All right.  So the sentencing will be on

15   June 21st at 1:15 p.m.

16         The government's version is to be submitted to the

17   Probation Office within two weeks of today's date, which is the

18   7th of April.

19         If the defendant wants to submit a written version to

20   Probation, that's due by the 14th of April.

21         The presentence report is due seven weeks from today,

22   which is the 12th of May.

23         The defendant's sentencing memorandum is due two weeks

24   before the sentencing date, which is the 7th of June.

25         And then the government's sentencing memorandum is due

1   by the 14th of June.

2            Anything else we need to talk about before we sign

3   off?

4            MR. ERSKINE:  Not from the government.  Thank you.

5            MR. TUNICK:  Your Honor, can we get the recommendation

6   from the Probation Office?

7            THE COURT:  That's part of my standard order.  It will

8   be in the order.

9            MR. TUNICK:  Thank you.

10           THE COURT:  Okay.  All right, everybody, take care.

11  Thanks a lot.

12           I'm going to get back on the road now.  I did this the

13  circumspect way.

14           All right, everybody, take care.  Thanks.

15           THE DEFENDANT:  Thank you, your Honor.

16       (Proceedings concluded at 4:10 p.m.)

17                      C E R T I F I C A T E

18       I certify that the foregoing is a correct transcript, to

19  the extent possible, of the record of proceedings in the

20  above-entitled matter, given the limitations of conducting

21  proceedings via telephone.

22

23
    /s/ GAYLE A. McGUIGAN_____          September 6, 2022
24  Gayle A. McGuigan, CSR, RMR, CRR                      Date
    Official Court Reporter
25