IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 CR 371-5 |
| V. | ) | Judge MATTHEW F. KENNELLY |
| | ) | |
| BIANCA FINNIGAN, | ) | |
| Defendant. | ) | |

*DEFENDANT BIANCA FINNIGAN'S MOTION TO WITHDRAW GUILTY PLEA*

BIANCA FINNIGAN, through counsel, pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), respectfully requests that this Honorable Court permit Ms. Finnigan to withdraw her plea of guilty in the above-captioned matter. In support of this Motion, Ms. Finnigan, through counsel, states the following:

(1) Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a person may withdraw a plea of guilty or nolo contendere after the court accepts the plea, but before it imposes sentence if "the defendant can show a fair and just reason for requesting withdrawal."

(2) A recent case from the Sixth Circuit describes the purpose of Rule 11(d)(2)(B), saying:

> This rule exists to permit "a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir.

1

2007) (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

*United States v. Watts*, No. 21-5584, 2022 U.S. App. LEXIS 24387, at *3 (6th Cir. Aug. 29, 2022).

This describes Ms. Finnigan's case. Her plea was "hastily entered with unsure heart and confused mind." As described in the attached affidavits, Ms. Finnigan felt pressured to quickly enter a plea without having had her questions and concerns addressed, to be the first to plead and gain some benefit in doing so. She allowed the perceived pressure that she felt, her anxiety, and desire to put an end to it interfere with her own considered judgment and the advice of her close family members.

(2) The Seventh Circuit Court of Appeals has recognized three general reasons that qualify as "fair and just":

> where the defendant shows actual innocence or legal innocence, and where the guilty plea was not knowing and voluntary. *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010).

*United States v. Graf*, 827 F.3d 581, 583 (7th Cir. 2016).

(3) In Ms. Finnigan's case, all three reasons apply. She is factually innocent, legally innocent, and her plea was not knowing and voluntary.

(4) Ms. Finnigan was charged with and entered her plea to count 1 of the indictment, alleging that beginning in 2008 and continuing to March 11, 2020, she conspired with Vivianna Lopez, Valerie Gaytan, Armando Flores, and Laura Lopez to knowingly conduct and attempt to conduct transactions

2

affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is the felonious buying and selling and otherwise dealing in controlled substances, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the transaction represented the proceeds of some form of unlawful activity, specifically dealing in controlled substances, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Section 1956(a)(1)(B)(i) provides in relevant part:

**(1)** Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>    **(B)** knowing that the transaction is designed in whole or in part—
>        **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

18 U.S.C.S. § 1956 (LexisNexis, Lexis Advance through Public Law 117-166, approved August 5, 2022)

(5) "A money-laundering violation under either § 1956 or § 1957 requires proof of two distinct acts: the unlawful activity that generated "proceeds" and then the monetary transaction conducted with the criminal proceeds. *United States v. Seward*, 272 F.3d 831, 836 (7th Cir. 2001), quoting *United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998)." *United States v. Kelerchian*, 937 F.3d 895, 908 (7th Cir. 2019).

Ms. Finnigan is not alleged to have been involved in the underlying drug conspiracy to which her brother-in-law pled guilty. The underlying offense was alleged to have taken place beginning in May 2005 and continuing to December 1, 2008. During this time-period Ms. Finnigan was 15 to 18 years old, attending high school, and uninvolved with the activities of Mr. Flores and his compatriots. In the absence of an on-going drug conspiracy, the statute of limitations on the underlying offense has long past, having expired in 2013 or 2014 at the latest.

The Seventh Circuit has found that "[a] charge of conspiracy to launder money requires proof that the defendant knowingly was involved with at least one other person who has agreed with him to commit an act of money laundering, and that the defendant knew the proceeds used to further the scheme were derived from illegal activity. Proof of the underlying offense of money laundering requires that a rational trier of fact could have concluded from the record that the defendant knowingly used the proceeds from a specified unlawful activity in financial transactions that 1) were intended to promote the continuation of the unlawful activity, or 2) were designed to conceal or disguise the proceeds of the unlawful

4

activity. 18 U.S.C.S. § 1956(a)(1), 1956(h)." *United States v. Castro-Aguirre*, 983 F.3d 927, 931 (7th Cir. 2020).

Ms. Finnigan did not agree to launder money and had no basis for knowing that money given to her to repay the use of her credit card on behalf of her sister was the proceeds from illegal activity that had occurred over 12 years prior to the discrete transactions in which she was involved. The payment of school tuition, the purchase of airplane tickets, and the aborted purchase of exercise equipment were not intended to promote the continuation of unlawful activity. Nor were they designed to conceal or disguise the proceeds of unlawful activity.

In the first instance, Viviana Lopez had legitimate sources of income at the time the questioned transactions took place. Secondly, even if some of the cash that was given to Ms. Finnigan did constitute proceeds from drug selling that occurred more than 12 years previously, there was no intent to conceal this fact, since it was already known to the government. The government allowed the family members to retain at least $300,000 in illegal proceeds from the Flores' brother's drug dealing, and the rest of the proceeds were known to the government through the detailed ledgers showing the proceeds, who collected them, and how they were distributed., that the Flores brothers provided to the government as part of their cooperation.

The Seventh Circuit has identified the types of transactions that may indicate that money laundering is afoot: "certain types of transactions may be indicative of a design to conceal, including, for example, transactions surrounded in unusual secrecy, structured transactions, depositing ill-gotten funds into another's

5

bank accounts, using third parties to conceal the real owner, or engaging in unusual financial moves which culminate in a transaction." *United States v. Castro-Aguirre*, 983 F.3d 927, 931 (7th Cir. 2020).

There was no unusual secrecy to the transactions under the circumstances, the transactions were straightforward and not "structured", to the extent that any "ill-gotten" funds were deposited in Ms. Finnigan's account, she had no reason to know that, and the transactions were not done to conceal the real owner of the money, but to protect that owner from discovery by those who seek to harm her.

To the extent that conspiracy requires an agreement to conduct an illegal act between Ms. Finnigan and at least one other person, there is no other person who could be considered a co-conspirator. Viviana Lopez, Ms. Finnigan's sister, believed that she had immunity from prosecution for helping her husband collect the drug proceeds owed to him, knew that she was entitled to a portion of the $300,000 in proceeds she was allowed to keep and use to support herself while her husband was in prison, and did not believe that she was engaged in illegal conduct when asking for her sister's help – only that she was protecting herself from being tracked and traced by those who would do her harm.

(5) Ms. Finnigan is factually innocent of the allegations. She did not know and had no reason to know that financial transactions she participated in during 2016 and 2020, bore any relationship whatsoever to proceeds from

dealing in controlled substances which dealing – by her now brother-in-law[1] -- occurred between 2000 through 2008, when Ms. Finnigan was aged 10-18 years old.

No evidence apart from the familial relationship between Ms. Finnigan and Vivianna Lopez supports such knowledge on Ms. Finnigan's part.

Vivianna Lopez is nine years' senior to Ms. Finnigan, who was not and is not her older sister's confidante with respect to financial matters.

(6) Ms. Finnigan told her counsel that she was, in fact, innocent of the charges against her and that she believed she had done nothing wrong. *See,* Exhibit 1, Affidavit of Bianca Finnigan.

(7) Nonetheless, counsel for Ms. Finnigan advised her that it would be in her best interest to be the first one to plead guilty and did not make clear to her that by pleading guilty she faced the possibility of 3 years imprisonment under the sentencing guidelines, instead assuring her that she would get a sentence of probation.

(8) Considering the legitimate business Mrs. Flores is engaged in, the fact that the government allowed the Flores' families to retain a portion of their previously earned drug proceeds, the substantial sum Mrs. Flores received in advance for the publication of her book, co-authored with her sister-in-law, and the assistance that Mrs. Flores received from her parents during the

---

[1] Peter Flores and Vivanna Lopez married in December 2010, in Mexico, where they were living at the time.

incarceration of her husband, no evidence has been included in discovery to demonstrate that Ms. Finnigan knew that any cash she received was the proceeds of Mrs. Flores' husband's drug dealing that ended at least 14 years ago, or that Ms. Finnigan would have any way of knowing that it was, assuming *arguendo* that Mrs. Flores retained cash from the pre-2009 years.

(9)  Ms. Finnigan also is legally innocent, since the government knew -- through the records provided to government agents by the Flores families during their cooperation -- the amount of money collected by Flores workers and family members during the last months or year of running their business. The government also discovered and seized other moneys that were collected after the cooperation had begun and that were not initially disclosed to the government. Under such circumstances there is no question of concealment or disguise with respect to the nature, location, source, ownership and control of any money from alleged drug dealing proceeds.

The statute of limitations on illegal activity that produced the alleged source of the funds ran in 2013 or 2014 at the latest.

(10)  Ms. Finnigan's family members were aware of her lack of knowledge or intent to become involved with any illegal activity and they objected to her plea of guilty for this reason.  Ms. Finnigan's family believed that she was not receiving enough information to justify the advice that her original counsel was providing to her. *See,* Exhibits 2 and 3, Affidavits of William Finnigan and Enrique Lopez.

(11)  Ms. Finnigan has been a homemaker since the birth of her first child in 2008. She has a high school diploma but did not pursue additional formal education, beyond a year at the Illinois Culinary Institute. She has no legal training, no experience with the criminal justice system, and insufficient knowledge, understanding or confidence to be able to halt a court proceeding, contradict her lawyer or the judge, or otherwise act in any way that she would perceive as contrary to the direction given her by her attorney.

WHEREFORE, Bianca Finnigan, through counsel, respectfully requests that she be permitted to withdraw her guilty plea in the above-captioned matter.

DATE:	September 16, 2022	Respectfully submitted:

By:	s/Andréa E. Gambino
	Attorney for Bianca Finnigan

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312) 322-0014
   agambinolaw@gmail.com

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that sent notification of such filing to the following:

Andrew C. Erskine, Esq.
Erica L. Csicsila, Esq.
Assistant United States Attorneys

and I hereby certify that I have mailed by United State Postal Service, or hand-delivered the document to the following non-CM/ECF participants: N/A.

DATE: September 16, 2022     Respectfully submitted,

                                        By:  s/Andréa E. Gambino
                                                Attorney for Bianca Finnigan

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312)322-0014
agambinolaw@gmail.com